[No. B014958. Second Dist., Div. Two. May 9, 1986.]

MICHAEL E. LIEPPMAN et al., Plaintiffs and Respondents, v.
JULIUS LIEBER et al., Defendants and Appellants.

**COUNSEL**

George & Collins and J. Christopher Toews for Defendants and Appellants.

Ball, Hunt, Hart, Brown & Baerwitz and Katherine H. Foulk for Plaintiffs and Respondents.

**OPINION**

**ROTH, P. J.**—Julius Lieber and his attorneys, the law firm of George & Collins (hereafter Lieber), appeal from the trial court's order granting the request of respondents Michael Lieppman and Lorraine Lieppman (hereafter Lieppman) for $2,500 as a sanction for frivolously moving for a change of venue.

Lieber worked as Lieppman's accountant in Long Beach between 1979 and 1983. On July 13, 1984, Lieppman filed a complaint against Lieber, claiming that Lieber had done a poor job, to his detriment. Lieber, who

had previously moved to Los Osos, in San Luis Obispo County, answered through his attorneys George & Collins. Lieber simultaneously moved to change the place of trial from Los Angeles County to San Luis Obispo County. The motion was made pursuant to Code of Civil Procedure section 397, which states: "The court may, on motion, change the place of trial in the following cases:

". . . . . . . . . . . . . . . . . . . . . .

"3. When the convenience of witnesses and the ends of justice would be promoted by the change."

The basis of the motion in essence was that Lieber was in poor health and had limited financial resources, both of which would suffer if he had to drive down to Long Beach to defend himself. Attached to the motion was the single declaration of Lieber himself, which stated in relevant part:

". . . . . . . . . . . . . . . . . . . . . .

"(3) I have personal knowledge of substantially all disputed factual matters involved in the action. It is my present intention to testify on a variety of such matters . . . . It is my belief that my testimony and that of plaintiffs will be the sole percipient witnesses to the facts and circumstances surrounding this action.

"(4) I have suffered two heart attacks, the first in October of 1967 and the second in March of 1980. I had chest pains and other difficulties in April of 1981 and underwent coronary bypass surgery in November of 1981.

"My physician in 1981 advised me that it would be inadvisable, given the state of my health, to continue with the full-time practice of public accounting. Based on this advice, I practiced part time during 1982-1983 and gave up my interest in the practice effective February 1, 1984.

"(5) At the present time I am retired and not engaged in active business of any kind. Because of my heart condition, I have no prospect of returning to active practice. It is my opinion that repeated travel to Los Angeles would be dangerous to my health. My doctors have repeatedly warned me to avoid undue strain.

"(6) My home is over 200 miles or more than four hours driving time from Los Angeles. No more convenient means of travel between San Luis Obispo and Los Angeles are available at this time.

"(7) My personal financial resources upon which my wife and I are dependent for our support, are extremely limited due to my forced early retirement as explained above. My personal income in 1984 from all sources was approximately $12,000, and will be that amount or less in 1985. I am informed and believe that plaintiff's current income exceeds $900,000 per year and that expenses are not a material consideration in his prosecution of this action.

"(8) The costs of defending this action will increase substantially if the proceedings are held in Los Angeles, due to travel and lodging expenses and due to expenses of retaining additional counsel. All defense costs will be paid solely from my personal resources since the claim involved in this action is not covered by insurance."

Lieppman opposed the change of venue and requested sanctions, arguing that moving to San Luis Obispo would promote neither the convenience of witnesses nor the ends of justice, and Lieber failed to show retaining the action in Long Beach would cause him undue hardship. The opposition was escorted by several declarations.

Lieppman's attorney declared that Lieber owns interests in valuable real property, so that coming to Long Beach for trial would not create insufferable financial hardship. Lieber had originally retained a Long Beach lawyer to represent him in this case, and only moved for a change of venue after discharging the Long Beach attorney and hiring his present Los Osos attorneys. Lieppman's attorney concluded that she had spent 25 hours preparing the opposition, and her hourly rate is $100. Therefore she requested attorney fees of $2,500 from Lieber. Michael Lieppman, Lorraine Lieppman, and their witness James Sullo submitted declarations, each of which stated that it would be inconvenient to go north for trial, resulting in loss of income and omitted professional responsibilities. Michael Lieppman further stated: "I am personally familiar with Mr. Lieber's medical history, including his cardiac condition. He discussed his heart condition with me frequently before, during and after the heart attacks and by-pass surgery. After his by-pass surgery, Mr. Lieber told me he had stopped having all chest pains, had no health problems, and was able to exercise and carry on his normal activities, including his accounting practice. Mr. Lieber was even able to move his household to Los Osos after his by-pass surgery."

Lieber submitted a supplementary declaration which stated that since his operation he had been hospitalized five times, and that he is on continuous medication.

On the basis of this evidence, on April 18, 1985, the trial court denied Lieber's motion, and assessed a penalty of $2,500 pursuant to Code of Civil

Procedure section 396b, subdivision (b), which states in part: "In its discretion, the court may order the payment to the prevailing party of reasonable expenses and attorney's fees incurred in making or resisting the motion to transfer whether or not that party is otherwise entitled to recover his or her costs of action." However, the minute order filed that day indicated that sanctions were granted on the authority of Code of Civil Procedure section 128.5, which states in part: "(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

■ An order imposing sanctions is appealable. (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942].)

■ Lieber first asserts that Code of Civil Procedure 396b, subdivision (b) by its terms does not apply to change of venue motions brought under Code of Civil Procedure section 397, subdivision 3. Lieppman differs. We do not decide this question. The trial court provided an alternative basis for its decision, i.e., Code of Civil Procedure section 128.5. There is no contention and no doubt that this general statute concerning frivolous tactics applies to Code of Civil Procedure section 397, subdivision 3. We therefore conclude that the trial court had the power to levy sanctions.

■ Lieber also contends sanctions are not authorized when the motion is made in good faith. Lieber claims that his motion was made in good faith. The trial court differed, saying: "I just can't conceive of how he thinks it would be moved for his convenience up there. . . . I don't feel that the motion has any merit whatsoever. . . ." Lieber claims the court abused its discretion. We do not agree.

■ Lieber's declaration was defective. It relied on hearsay, generalities and conclusions. Hearsay cannot be the basis of an affidavit which is to be used as evidence. (*Star Motors Imports, Inc.* v. *Superior Court* (1979) 88 Cal.App.3d 201, 204 [151 Cal.Rptr. 721].) Such affidavits may not contain allegations based on "information and belief." (*Ibid.*) ■ "The burden rests upon one who seeks a change of venue under [Code of Civil Procedure, section 397, subdivision 3] to prove that both the convenience of witnesses and ends of justice will be promoted thereby, and this he must do through affidavits that contain more than generalities and conclusions." (*Hamilton* v. *Superior Court* (1974) 37 Cal.App.3d 418, 424 [112 Cal.Rptr. 450].)

Lieber averred poor health because of heart trouble. Nameless doctors advised him to give up full-time work and avoid undue strain. He did not submit declarations from any doctors. The doctorial warnings constitute

inadmissible hearsay. Lieber expressed the *opinion* that his health would be endangered by traveling to Long Beach, but also affirmed he was simultaneously prepared to testify extensively at trial. The trial court was entitled to view this opinion with a skeptical eye.

Lieppman's declaration noted that Lieber had told him that after Lieber's surgery he had no chest pains, had no health problems, and was able to exercise and carry on with his normal activities.

Lieber's declaration asserted that his financial resources are meager, but he attached no tax records or other positive proof of the assertion. Lieppman countered without contradiction Lieber has interests in valuable real estate.

Lieber is himself retired, and intended to call no other witnesses. Lieppman's witnesses were working and would suffer tangible inconvenience, including lost wages, if forced to litigate in San Luis Obispo.

■ According to Lieppman, Lieber hired a Long Beach attorney for this case, discharged him and then hired his current counsel. Only at this point did Lieber move for a change of venue. This sequence intimates the inference that the proposed change of venue was actually for the benefit of Lieber's attorneys. Convenience of counsel is not a permissible basis for a change of venue motion. (*Chaffin Constr. Co.* v. *Maleville Bros.* (1957) 155 Cal.App.2d 660, 663 [318 P.2d 196].)

■ Concerning the amount of the penalty, Lieppman's attorney stated that the sum represented her charge for the amount of work she did. While she may not be the swiftest of lawyers, Lieber does not contest the fact that she actually worked 25 hours in opposing his motion, nor does he assert that she may not charge $100 for an hour of lawyering. We do not find it significant that this penalty is larger than in previous reported cases. (See, e.g., *Mission Imports, Inc.* v. *Superior Court* (1982) 31 Cal.3d 921 [184 Cal.Rptr. 296, 647 P.2d 1075] [$350]; *Fegles* v. *Kraft* (1985) 168 Cal.App.3d 812 [214 Cal.Rptr. 380] [$450].)

Lieber does not show the trial court abused its discretion in finding the motion to be frivolous.

■ However, Lieber makes one solid point: The trial court's order did not recite in detail the circumstances justifying the imposition of sanctions, although the court made oral findings at the hearing. Section 128.5, subdivision (c) provides: "Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or the court's own motion, after notice and opportunity to be heard. *An order*

*imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order.*" (Italics added.)

In the recent case of *Fegles* v. *Kraft, supra,* 168 Cal.App.3d 812, 816-817 the court stated: "The order was in writing; it stated the amount of attorneys' fees; but it did not 'recite in detail the conduct or circumstances justifying the order.' The court must state the specific circumstances giving rise to the award of attorneys' fees, and state with particularity the basis for finding those circumstances amount to 'tactics or actions not based on good faith which are frivolous or which cause unnecessary delay.' The court's written order should be more informative than a mere recitation of the words of the statute. . . .

"Although the judge's comments here unmistakably reflected his appraisal of the venue motion, and gave appellants notice of his reasons for the award of attorney's fees, we can envision situations where a taciturn judge makes no comments in connection with his rulings, or if he does make comments, they are ambiguous. In *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, at page 638 [150 Cal.Rptr. 461, 586 P.2d 942], our Supreme Court gave the Legislature the rationale for requiring detailed written findings when ordering attorney's fees for frivolous motions. 'The use of courts' inherent power to punish misconduct by awarding attorney's fees may imperil the independence of the bar and thereby undermine the adversary system . . . .' '". . . [A]ny power of the trial court to impose such sanctions should be created by the legislative branch of government with appropriate safeguards and guidelines developed following a thorough in-depth investigation. [Fn. omitted.]'" *(Id.,* at p. 639, citing *Young* v. *Redman* (1976) 55 Cal.App.3d 827, 839 [128 Cal.Rptr. 86].)"

The cause is remanded to permit the trial court to either make the required findings, or vacate its award of attorney fees to Lieppman. The parties are to bear their own costs on this appeal.

Beach, J., and Gates, J., concurred.

On May 30, 1986, the opinion was modified to read as printed above.